The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award except for minor modifications.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. The PMA Group is the carrier on the risk.
5. Plaintiff sustained a compensable injury to his back on 4 April 1997.
6. Plaintiff's average weekly wage at all relevant times was $608.12, yielding a compensation rate of $405.43.
7. Plaintiff received all benefits to which he was entitled through 29 May 1997.
8. Plaintiff was terminated from his employment with defendant-employer, effective 30 May 1997, and has not received any benefits from that date to the present time.
9. Plaintiff has not searched for any employment.
10. The following evidence has been stipulated into the record:
(a) MedOne Occupational HealthCare, Inc. (31 pp.)
(b) ProActive Therapy/PT Notes (7 pp.)
(c) Western Medical Group, Inc. (4 pp.)
(d) Comprehensive Rehabilitation Health Psychology (1 p.)
(e) Cumberland County Hospital Systems, Inc. (9 pp.)
(f) Dr. Edward Richard Mulcahy (4 pp.)
(g) Pharmacy Records (1 p.)
The following were also stipulated into evidence:
(a) Plaintiff's deposition of 5 November 1997.
(b) Plaintiff's recorded statement taken on 7 May 1997.
 (c) Correspondence from the Department of Labor to plaintiff, dated 16 June 1998
 (d) A copy of the Texfi Industry's North Carolina Hourly Handbook.
 (e) A copy of plaintiff's personnel file, specifically including plaintiff's resume, write-ups and signature page to the North Carolina Hourly Handbook.
11. The issues to be determined are:
 (a) Does plaintiff have the burden of proof of establishing continuing temporary total disability?
 (b) Is plaintiff permanently totally or permanently partially disabled?
 (c) Was plaintiff's employment terminated for reasons unrelated to his workers' compensation claim?
 (d) Is plaintiff entitled to any further compensation benefits?
 (e) Are defendants responsible for medical compensation and expenses, which were not authorized, and for which plaintiff did not seek authorization?
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was a 31-year-old male at the time of the hearing before the Deputy Commissioner. He graduated from high school and received an associate diploma in electronics at a community college. Plaintiff began his employment with defendant-employer on 20 September 1996 as an electrician/electronic technician.
2. Plaintiff's job required him to crawl, climb, reach, stoop, bend and twist to reach machinery that required electronic repair.
3. Plaintiff sustained a compensable back injury by accident on 4 April 1997. He was putting in an electrical system and standing on a ladder during installation. A forklift was going through his work area and sounded its horn, startling plaintiff and causing him to lose his footing and slip off the ladder. As he came down the ladder, he placed his foot on a piece of conduit, causing his feet to twist one way and his body the other, resulting in a back injury. He immediately reported the incident to his supervisor.
4. Plaintiff initially presented to MedOne Occupational Healthcare on 4 April 1997. He was diagnosed with a lumbosacral strain and told to return to work in a light duty capacity. Plaintiff returned to MedOne on 14 April 1997 and on 22 April 1997. He was given an out of work note from 18 April 1997 through 22 April 1997 and told to return to work on 23 April 1997 with certain restrictions. Plaintiff returned to MedOne on 29 April 1997 with continued complaints at which time a referral was made for an orthopedic consultation. He was advised to return to work on 30 April 1997 in a light duty capacity with no prolonged walking/standing, no repetitive bending/stooping, no kneeling or squatting and no lifting over 15 pounds. Plaintiff returned to work for defendant-employer, continuing as an electrician in a modified capacity. He did not complain to supervisors about any difficulty or inability to perform tasks assigned.
5. Plaintiff's job as an electrician required him to work an 8:00 a.m. to 4:00 p.m. shift during which time he would take lunch from 12:00 noon to 12:30 and have two 10 minute breaks. His responsibilities required him to put equipment together and to repair it and to handle all wiring and other electrical needs.
6. Plaintiff presented to Dr. James Maultsby, an orthopedic physician, on 30 April 1997. At that time plaintiff was doing modified work and very little bending or lifting. Dr. Maultsby diagnosed the plaintiff as having a resolving lumbosacral strain with continued neuritis. Dr. Maultsby recommended a neck brace and indicated that plaintiff should remain out of work from 30 April through 5 May 1997, resuming light duty work on that day.
7. Plaintiff returned to MedOne on 8 May 1997 with continued complaints. An MRI was ordered and plaintiff was told to remain out of work from 8 May 1997 through 15 May 1997. Plaintiff returned to Dr. Maultsby on 15 May 1997. At that time Dr. Maultsby returned plaintiff to light work with restrictions of no prolonged walking/standing, no repetitive bending/stooping, no kneeling or squatting, no lifting over 20 pounds and an allowance for stretching exercises and use of an ice massage. Plaintiff returned to work for defendant-employer.
8. Plaintiff telephoned defendant-employer on 22 May 1997 at approximately 8:15 a.m. indicating he would be unable to work that day. Plaintiff did not provide a medical release or an out-of-work note. Dr. Maultsby had released plaintiff to return to work in a light duty capacity during this period of time.
9. Plaintiff called defendant-employer on 27 May 1997 at approximately 8:35 a.m. to report that he would be unable to work that particular day. Again, plaintiff failed to provide a medical release or an out-of-work note. According to Dr. Maultsby, plaintiff was capable of light duty work during this period of time.
10. Plaintiff called defendant-employer on 28 May 1997 at approximately 10:58 a.m. to report that he would be unable to work on that particular day. Again, plaintiff failed to provide a medical release or an out-of-work note. Plaintiff was under light duty restrictions and was capable of light duty work during this period of time. This was plaintiff's third unexcused absence in a one-week period of time.
11. May was not the first month plaintiff had problems with his attendance and tardiness. On 1 April 1997 plaintiff was counseled about 6 absences and 5 tardy instances. He was warned that 12 absences within a 12-month period would result in termination. Plaintiff was also counseled on 1 April 1997 regarding his actual job performance.
12. Plaintiff was terminated on 30 May 1997 for violation of defendant-employer's attendance policy. Defendant-employer's Employee Handbook specifically states that an employee with three unexcused absences in a twelve-month period will be subject to termination. Plaintiff's absences from work on 22, 27 and 28 May were unexcused. Plaintiff was under light duty restrictions during this period of time and did not provide an out-of-work note indicating he was incapable of working.
13. Plaintiff never notified his treating physicians or his supervisor that his job tasks, specifically carrying a toolbox, exceeded the lifting restrictions he was given.
14. According to Mr. Roy Faircloth, Personnel Manager for defendant-employer, violation of attendance policy would ordinarily require dismissal of a non-disabled employee. The attendance policy is regularly enforced and other employees at defendant-employer had been terminated for such violations. The policy is important to defendant-employer to insure that the employer has coverage available for the work that is to be performed and to protect production at the plant.
15. If plaintiff had provided a doctor's out-of-work note, he would not have received an unexcused absence and his termination would not have occurred.
16. If plaintiff had not been terminated for violation of the attendance policy, light duty work was available and plaintiff would have remained employed.
17. Plaintiff remained under light duty restrictions subsequent to his termination and returned to Dr. Maultsby on 12 June 1997. At that time, plaintiff exhibited substantial symptom magnification. Additionally, plaintiff indicated he did not want to return to work even on a modified basis in spite of the improvement in his physical condition. Dr. Maultsby recommended a referral to Dr. Vern Schmickley for a psychological evaluation.
18. Plaintiff did not attend the psychological evaluation scheduled with Dr. Vern Schmickley.
19. Plaintiff presented to Dr. Kenneth Oswalt on 23 June 1997. During his examination plaintiff was able to get up rapidly into a seated position without any evidence of pain, or pain behaviors. Plaintiff also sat in an upright position on the end of the examining table without any difficulty, resting on his arms in a 90-degree position. When asked to get down on the floor, plaintiff got down without difficulty and walked with a normal gait. However, when plaintiff was asked to perform range of motion exercises relating to his lower back, he became much tenser. Waddell's signs were 5 out of 5 and positive for symptom magnification. After noting many inconsistencies throughout the physical examination, Dr. Oswalt determined there was no evidence of continuing disability or limitation of function. A full recovery without future disability was anticipated.
20. Plaintiff returned to Dr. Maultsby on 7 August 1997. Dr. Maultsby's examination notes again noted symptom magnification. He released plaintiff at maximum medical improvement and indicated he was able to perform unrestricted work without any permanent partial impairment.
21. Dr. Raymond Metzer also saw plaintiff and diagnosed him with degenerative disc disease, probable symptom magnification with psychological or litigious factors affecting the pain complaints.
22. Plaintiff next chose to see his family doctor, Dr. James Livingston. Plaintiff first saw Dr. Livingston on 21 October 1997 and at no time before or after seeing Dr. Livingston did plaintiff seek authorization or approval from the defendants or the Industrial Commission. Dr. Livingston referred plaintiff to an orthopedic physician, duplicating the treatment previously administered.
23. Plaintiff presented to Dr. Edward Mulcahy once for twenty minutes on 13 January 1998, for a second opinion regarding his permanent partial impairment rating. According to Dr. Mulcahy, plaintiff was capable of light duty work without any repeated bending, twisting or climbing. He was also restricted to lifting 15 pounds. Plaintiff was at maximum medical improvement and was given an 8% permanent partial impairment rating to his back.
24. Plaintiff averred at the hearing before the Deputy Commissioner that Dr. Livingston provided him with an out-of-work note indicating he was unable to do any type of work and that he was permanently and totally disabled. This medical note was not produced before the initial hearing or after the hearing and is not referenced in medical notes. Plaintiff admitted he did not seek authorization from the defendant-carrier or defendant-employer regarding approval for this treatment.
25. Plaintiff stipulated he has made no efforts of any kind to obtain employment subsequent to his termination. Plaintiff has failed to make a reasonable and good faith effort in trying to obtain employment. Plaintiff testified at the hearing that he feels he can work as long as it is not his previous employment, but offered no justification for his failure to obtain alternative employment.
***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with defendant-employer on 4 April 1997. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is not entitled to a presumption of continuing temporary total disability, as the parties never entered into a Form 21 agreement. In cases where there has been no previous determination that the employee is disabled, the plaintiff bears the burden of proving his disability and the extent of his disability. Brown v. SN Communications, Inc.,124 N.C. App. 320, 477 S.E.2d 197 (1996); Stone v. GG Builders,121 N.C. App. 671, 468 S.E.2d 627 (1996); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993).
3. Plaintiff has failed to meet his burden of proving continued disability by failing to produce medical evidence which shows that as a consequence of the work-related injury, he is physically or mentally incapable of working in any employment; by failing to produce evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; by failing to produce evidence that he is capable of some work, but that it would be futile because of pre-existing conditions to seek other employment; and by failing to produce evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution,supra.
4. Plaintiff constructively refused employment by violating the attendance policy at defendant-employer which ultimately led to his termination. Defendant-employer has proven by a preponderance of the evidence that plaintiff was terminated for misconduct or fault unrelated to the compensable injury, for which a non-disabled employee would ordinarily have been terminated.Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996). Once the employer has made such a showing, an employee's conduct will be deemed to constitute a constructive refusal to perform the work provided and the consequent forfeiture of benefits or lost earnings, unless an employee is then able to show that his or her inability to find or hold other employment of any kind, or other employment at a wage comparable to that earned prior to the injury, is due to the work-related disability. Id. Plaintiff has failed to offer any evidence that would show that his inability to find or hold other employment of any kind is due to the work-related disability. Plaintiff has failed to make any effort to obtain employment.
5. Plaintiff failed to obtain approval from the Industrial Commission within a reasonable time and the treatment provided by Dr. Livingston was not necessary to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. § 97-25;Schofield v. Tea Co., 299 N.C. 582, 264 S.E.2d 56
(1980).
6. Plaintiff is not entitled to total temporary disability benefits after 30 May 1997.
7. As a result of his compensable injury on 4 April 1997, plaintiff might be entitled to permanent partial disability benefits; however, the Industrial Commission gives greater weight to Dr. Maultsby's opinion that plaintiff has no permanent partial impairment than to the opinion of Dr. Edward Mulcahy.
8. Plaintiff is entitled to have defendants provide all medical treatment arising from the 4 April 1997 compensable injury to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25. The approved medical treatment does not include the medical treatment provided by Dr. James Livingston.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for temporary total disability benefits and permanent partial disability benefits is denied.
2. Plaintiff's claim for authorization and approval of the medical treatment administered by Dr. James Livingston is denied.
3. Each party shall bear its own costs.
This the ___ day of September 1999.
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER
LKM/bjp